JONES, Justice
(concurring specially).
This case poses a rather complex problem as to the scope of review issue. The Court of Civil Appeals’ affirmance is grounded on the notion that “review by certiorari,” prescribed in the Workmen’s Compensation Statute, is the old common law certiorari review, or at least some modified version of this common law writ. This may have been the original intent of the framers of the Minnesota Act from which our Act comes, though a more explicit reason is disclosed in the early decisions of the Minnesota Supreme Court. The overriding purpose of the compensation law was to meet a de *546 manding social need arising from industrial injuries. Appeals from lower court awards were seen as defensive strategy to delay payment. Appellate review was thus provided by petition for writ of certiorari to 1) allow the appellate court to deny the petition summarily (a practice which never occurred either in Minnesota or Alabama), and 2) eliminate the necessity for a Bill of Exceptions (Transcript of the Evidence).
It is on this premise that the Act requires the trial judge to make a Finding of Facts and Conclusions of Law. The appeal, as originally contemplated, was on the record proper to test the trial Court’s legal conclusions based on its Finding of Facts. We must remember that Minnesota’s Act was one of the first in the nation (1913), and at that time the social reformers could not visualize any factual issues (except the typical “swearing matches”) which the trial judge would not conclusively resolve in his Finding of Facts; and appeals were seen as mere means of delay by the employer or, in legitimate cases, a means of resolving disputed interpretations of the Act. Therefore, appellate review by way of the common law writ of certiorari seemed appropriate because the appellate court would either decline its permission to review (thus denying the petition and, technically, not ordering the record below certified up), or it would review its legal validity on the record proper; and, if the final decree was proper and legal on its face, affirm. It was simply inconceivable that the claimant would appeal. The Act was so simple — -based on a no-fault concept — the only way a claimant could lose would be to have a disputed factual issue resolved against him and this would not support an appeal.
This myth was indeed short-lived. One of the early Minnesota appeals posed the unpredicted: The assignment of error challenged the trial court’s Finding of Facts as unsupported by the evidence. The Minnesota Supreme Court, consistent with the literal language of their Act, could have confined their review within the four corners of the common law writ of certiorari and summarily affirmed. But they did not; instead, they said (and I think to their credit) that a Bill of Exceptions was appropriate in order to test the Finding of Facts against the evidentiary support therefor. Thus, out the window went review by common law certiorari.
This is the precise holding of Ex parte Sioss-Sheffieid Steel & Iron Co., 207 Ala. 219, 92 So. 458 (1922). There, this Court, expressly relying on the Minnesota precedent, held it appropriate for the petition to include a Bill of Exceptions for appellate review of the issue whether the Finding of Facts below was supported by the evidence. The language of our cases has attempted to retain some degree of distinction between workmen’s compensation scope of review and that of other cases. That distinction is shown in the absence from the workmen’s compensation opinions of the terms “preponderance of the evidence” and “unless plainly and palpably wrong or manifestly unjust.” There was a time in our appellate history (in the non-compensation context) when these latter terms were more frequently exercised; and, as a sometimes occurrence, cases were reversed on a “weight of the evidence” or a “preponderance of the evidence,” standard. While our opinions in noncompensation cases retain this “loophole” type language (and I’m not for dropping it) in defining our ore tenus scope of review rule, no case has been reversed on this weight of the evidence standard since I have been on the Court, or to my knowledge in the last 50 years. (To be sure, I found several cases that used the expression, “palpably wrong and manifestly unjust,” to reverse, but each of these is in the context of “no evidence to support,” which is no different from the workmen’s compensation standard.) My only point is that I doubt the practical justification for the distinction.
But back to the instant issue: The language from Ex parte Sloss-Sheffield (“. . . admissibility of evidence will [not] be . considered”) is dictum and is unsupported by the cases cited. None of these (nor others I have found) involve admissibility of evidence. All of the cases that echo the theme, “any legal evi *547 dence to support the findings,” are dealing with conflicting legal evidence. I question whether we should approve a standard of review that permits a workmen’s compensation decree to be affirmed that is based on evidence which, in substantial part, is patently inadmissible. And, because this Court rejected review by common law certiorari from the very beginning, I would prefer that we make no distinction between the scope of review standard in workmen’s compensation and non-workmen’s compensation cases. But the Court of Civil Appeals, whose appellate jurisdiction embraces these appeals, consistently maintains the validity of this distinction, and six of my fellow Justices (two Justices recuse) are totally unimpressed with my no distinction contention and its precedential premise. Therefore, in the spirit of unanimity, I reorient my premise: It is more important that the rule of review be definitive and well understood by Bench and Bar than what rule obtains.
A brief word of explanation of this narrow scope of review Rule may be helpful: Unless counsel for the nonprevailing party is convinced that the trial court’s Finding of Facts is totally unsupported by any legal evidence, his appeal must find its basis in erroneous conclusions of law; and, in such cases, a transcript of the evidence is sur-plusage to the record on appeal.
Admittedly, appellate purists can be heard to say: This Rule invites counsel in a weak case (where he has some legal evidence but of such low probative force as to virtually assure an adverse finding) to offer evidence which is patently inadmissible but of such high probative value, if admitted, as to virtually assure a favorable finding. If he convinces the trial judge to admit the proffered illegal evidence, (After all, what can he lose?), he not only wins his case, he renders it as well — appellate review being unavailable. (Indeed, the instant case borders on this extreme example.) To this contention we can only answer, “But therein lies the distinction between the scope of appellate review in workmen’s compensation and non-workmen’s compensation cases.” And, having so answered, we can then utter a little silent prayer that just maybe this hypothetical situation will not be a common occurrence.